horn, for the reason that a horn, if blown, would not have been available, on such a night, to give any useful notice to the steamer. It is proved by the claimants to have been clear weather at 7½ p. m., when the steamer passed the lightship, the wind then blowing from the south and west, and freshening. At 10½ p. m. it was blowing heavily from south-southwest, and by 2 p. m. blew from north-northwest. At the time of the collision rain was falling, according to the evidence for the steamer, and the wind south-southwest. These circumstances are calculated to raise doubts as to the night being one to be properly termed foggy, but there is no doubt that it was a bad night. "About as bad a night as I ever saw," says the engineer of the steamship. The value of the fog horn signal must depend upon the weather, and the obligation to blow it cannot attach, if it be clearly shown that there were attending circumstances which would render it a useless precaution.

Doubts have been expressed as to the ability to hear a fog horn on a steamer at any time when the steamer is in full motion (The Bay State, 18 How. [59 U. S.] 92), but the truth I take to be that it depends upon circumstances whether the horn can be made of use. Under some circumstances, a hail even can be heard at a long distance by attentive ears on a steamer in full motion. Under other circumstances, a loud horn cannot be heard. On this occasion the night was undoubtedly boisterous. The evidence shows that the loudest hails made after the collision by those on the wreck, whose lives were apparently dependent on making themselves heard, failed to reach the steamship, although she must then have been near by, and at times still. The loud hails of the chief mate of the steamship directed to those on the wreck, were also unheard by them. They could not even hear the whistle and the blowing steam, both of which sounded loudly after the accident. These circumstances show quite plainly, to my mind, that a fog horn, if blown on the schooner, would have been of no use. The whistle of the steamer, which is shown to have been blowing while the schooner was approaching, was of no use, for it was not heard by the hands on the schooner till the steamer was on the point of striking them.

My conclusion, therefore, is that the schooner cannot be held guilty of fault for omitting to blow a fog horn, and that the steamship must be held solely responsible, because of her unlawful speed.

[A final decree awarding the libelant $10,849.41 damages and $416 costs was entered December 5, 1871. The case was again heard upon a question of taxation of witnesses' fees in Case No. 8,252. An appeal was taken by the claimant, and the decree above reversed by the circuit court on the ground that both vessels were in fault. An apportionment of the damages was ordered. Id. 8,254. The case was again heard upon a libel of the seamen for wages. Id. 8,253.]

## Case No. 8,252.

The LEO.

[5 Ben. 486.] [1]

District Court, E. D. New York. Jan. Term, 1872.

WITNESS FEES — TRAVEL FOR MORE THAN A HUNDRED MILES.

Travel fees for a witness subpoenaed out of the state can only be taxed for a hundred miles.

[Cited in U. S. v. Sanborn, 28 Fed. 304; Buffalo Ins. Co. v. Providence & Stonington S. S. Co., 29 Fed. 237; The Vernon, 36 Fed. 116; Burrow v. Kansas City, Ft. S. & M. R. Co., 54 Fed. 282; Pinson v. Atchison, T. & S. F. R. Co., Id. 465.]

[This was a libel by the owners of the schooner Saxon against the steamship Leo for damages on account of collision. There was a decree in favor of the libelants. Case No. 8,251. The case is now heard upon the question of witness fees.]

BENEDICT, District Judge. The appeal from the clerk's taxation of witnesses' fees in the case raises the question, whether, as against the adverse party, traveling fees of a witness subpoenaed out of this state for a greater distance than one hundred miles can be taxed. The point has been decided by Mr. Justice Nelson, and the practice in the Southern district, in conformity with that decision, is to tax traveling fees for no greater distance than the subpoena would run, which is a distance of one hundred miles from the place of trial out of the district. The practice in this district must conform to the same decision, and accordingly the appeal in this case is sustained, and a retaxation must be had in accordance with this opinion.

## Case No. 8,253.

The LEO.

[8 Ben. 506.] [2]

District Court, E. D. New York. July. 1876.

COLLISION—STALE CLAIM—LACHES—SEAMEN'S EFFECTS.

1. The owners of a schooner filed a libel against the steamship Leo, owned by a corporation, to recover for her loss by collision. Before the trial of the cause, libels were filed against the Leo, on behalf of the seamen on the schooner, to recover for the loss of their effects by the collision. No process was issued however on these libels until nearly five years thereafter, during which time the suit of the owners had been carried by appeal to the supreme court of the United States, which had held both vessels in fault. After such decision processes were issued on the seamen's libels against the steamship, which still continued to be owned by the same corporation, although nearly all its stock had in the meantime been transferred to other hands: Held, that, if the libellants were ordinary persons, or if the libels had not been filed within a reasonable time, the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.].

[2] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]